**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**Houston Division**

|  |  |
|---|---|
| **NATHAN ROGERS**, | ) |
| | ) |
| *Plaintiff*, | ) **Civil Action No.** |
| | ) |
| v. | ) **JURY TRIAL DEMANDED** |
| | ) |
| **UNITED AIRLINES INC.,** | ) |
| | ) |
| *Defendant*. | ) |
| | ) |
| Serve: Corporation Service Company | ) |
| 211 East 7th Street, Suite 620 | ) |
| Austin, TX 78701-3218 | ) |
| | ) |

## COMPLAINT

**COMES NOW**, Plaintiff Nathan Rogers ("Plaintiff" or "Mr. Rogers"), by counsel, brings this action against Defendant United Airlines., ("United" or "Defendant"), and alleges as follows:

### I.     INTRODUCTION

1.     Plaintiff brings this suit for violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), 38 U.S.C. §§ 4301-4355 as expanded by the 21st Century Veterans Healthcare and Benefits Improvement Act, January 2, 2025 ("DOLE Act"), as referenced hereinafter, and seeks redress for discrimination and denial of benefits of employment based on Mr. Rogers's military service, as well as United's failure to provide rights and benefits upon his return from military duty.

2.     USERRA forbids employers to deny "retention in employment, promotion, or any benefit of employment" to an employee based on that employee's military service. 38 U.S.C. §

4311(a). If the employee's military service "is a motivating factor in the employer's action" the employer has violated USERRA. 38 U.S.C. § 4311(c)(1). 38 U.S.C. § 4303(4)(A) provides that an "employer means any person, institution, organization, or other entity that pays salary or wages for work performed or that has control over employment opportunities. . . ."

3. Among other things, United failed to place Mr. Rogers in the position he would have attained but for his military service, including proper restoration of field trip selection rights and other seniority-based benefits, thereby denying him overtime and seniority-linked opportunities. Specifically, United placed Mr. Rogers at the bottom of the field trip selection list after his return from military leave and, as a result, he was denied selection for field trips.

4. Mr. Rogers requested to use the up-to-14-day USERRA period to report back to work following a period of service greater than 30 days, but he was instructed to return immediately.

5. United further instructed Mr. Rogers to return to work immediately at the conclusion of his active-duty orders in December 2024, despite his request to use the USERRA-protected post-service return window and asserted there was no leeway in his orders or the union handbook.

6. Plaintiff further brings this suit under 29 U.S.C. § 2601 *et seq.* the Family and Medical Leave Act, "FMLA." The FMLA is a federal law with the purpose of entitling "employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition" 29 U.S.C. § 2601(b).

2

7.  United interfered with and denied Mr. Rogers's rights under the Family and Medical Leave Act (FMLA) by failing to credit his USERRA-covered military service toward the 1,250-hour eligibility requirement, denying his request for parental/bonding leave, and failing to provide individualized eligibility and rights notices.

8.  United's HR informed Mr. Rogers that he was not eligible for federal FMLA, referenced alternative leave, and indicated that childcare would not qualify absent more details, rather than crediting his military service hours toward eligibility.

9.  As to retirement benefits, Mr. Rogers's account records reflect that United failed to make employer retirement contributions during most of his USERRA-covered service, with no employer contributions visible from approximately May 2023 through September 2024, contributions appearing to resume on or about November 29, 2024 in the amount of $264, and no make-up contributions credited for the military-leave period.

10. United also under-credited Mr. Rogers's profit-sharing by paying him $333.08 for 2023 and $56.35 for 2024, while treating eligible earnings as $0.00 for much of 2024, based on an HR position that USERRA does not require deeming earnings for periods of military service.

11. United's 2024 Profit Sharing Statement for Mr. Rogers showed eligible earnings of 0.00 for the period 01/01 to 10/31 and 1,779.20 for 11/01 to 12/31 at a profit-sharing percentage of 3.1673%, yielding a $56.35 payment.

12. Mr. Rogers also seeks relief under USERRA § 4316(b) because United treated military leave less favorably than comparable leaves by denying compensation and related benefits that United generally provides to employees on other leaves of absence with similar seniority, status, and pay. USERRA § 4311(a) (prohibition against discrimination), § 4311(b)

3

(prohibition against retaliation), and § 4316(b)(1) (entitlement to comparable benefits), as well as the new mandates of the DOLE Act.

13. Because USERRA protects benefits of employment broadly, including bonuses, pension rights, and opportunities to select work hours or location, United's profit-sharing, retirement contributions, seniority-based field trip opportunities, and related benefits fall within USERRA's protections.

14. Mr. Rogers's USERRA-covered service included orders dated January 9, 2023 to February 16, 2023; extended orders from March 13, 2023 to September 30, 2024; and further orders from November 12, 2024, to December 20, 2024.

15. As a direct and proximate result of United's conduct, as pled below, Mr. Rogers has suffered damages including lost wages and employment benefits, and he seeks all make-whole relief authorized by law.

## II. NAMED PARTIES

16. Plaintiff Nathan Rogers is a resident of Hawaii and is also a member of the U.S. Army National Guard.

17. Upon information and belief, United Airlines, Inc. ("Defendant") is a stock corporation headquartered corporation with principal place of business at 233 South Wacker Drive, Chicago, Illinois 60606.

## III. JURISDICTION AND VENUE

18. This Honorable Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the Uniformed Services Employment and Reemployment

4

Rights Act (USERRA), 38 U.S.C. § 4301 et seq., and the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq., as well as other applicable federal statutes.

19. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

## IV. FACTS

20. Plaintiff has served in the United States Army honorably since 2016 and currently, is a Warrant Officer in the Army National Guard.

21. Defendant hired Plaintiff as an Aircraft Technician in January 2022.

22. Plaintiff was selected by the Department of Defense to attend rotary wing school ("Rotary wing pilot school") at Fort Rucker.

23. Shortly after beginning employment with Defendant, Plaintiff received federal military orders requiring him to attend U.S. Army flight school, placing him on full-time military active duty from March 2023 through September 2024, and again from November 12, 2024 through December 20, 2024.

24. Plaintiff promptly notified Defendant's management of his military orders.

25. Since his hire Mr. Rogers has maintained a good employment record with no negative evaluations nor disciplinary issues, and he has maintained good standing with his supervisors and the company.

    a. Mr. Rogers return from Military Service to United

26. Mr. Rogers military orders were set to finalize on 20 December 2024.

27. During this period, Mr. Roger's wife was undergoing pregnancy-related complications requiring urgent medical evaluation, and their other young 2-year-old child required support.

5

28. On December 19, 2024, Mr. Rogers contacted United's human resources to coordinate his return to United after the subsequent military activation.

29. On December 19, 2024, Plaintiff emailed Defendant's HR representative Ms. Sheraine Akiu requesting to use two weeks after his orders ended to return after Christmas, in light of his wife's health condition and his 2-year-old son's condition.

30. In his December 19, 2024, email, Plaintiff asked what paperwork he needed to complete to take this time.

31. On December 19, 2024, Ms. Akiu responded to Plaintiff, stating that after review of Plaintiff's military orders, completion of military duties was December 20, 2024, and Plaintiff's return to work would be no later than December 21, 2024.

32. Ms. Sheraine Akiu stated that Plaintiff could pick up his badge.

33. Ms. Akiu further stated that, since the badging office was closed on weekends, Plaintiff's manager approved him to pick up his badge on Monday, December 23, 2024, and report to work after that.

34. Ms. Akiu stated that Defendant's review of Plaintiff's military orders and the union handbook did not show any "leeway" for additional time off after military service and requested that Plaintiff forward any documentation if he believed otherwise.

35. Defendants informed Plaintiff that, regarding his son's illness, he would have to return from military duty and then take either sick dependent leave or use any available vacation time, treating it as a separate instance from military leave.

36. Defendant did not reference Plaintiff's eligibility for leave under the Family and Medical Leave Act (FMLA), did not provide leave paperwork, and did not offer any accommodation.

37. Plaintiff complied with Defendant's instructions and returned to work as directed.

6

38. Upon Plaintiff's return, Defendant placed Plaintiff at the bottom of the list for field trip selections, rather than retaining his prior position.

39. Plaintiff was denied selection for any field trips after re-enrollment.

b. Mr. Rogers post Return to United and Profit- Sharing Plan

40. Mr. Rogers initiated an inquiry into the employee portal on January 30, 2025, where he asked about the discrepancy in his profit-sharing distributions.

41. For calendar year 2023, United issued company-wide profit-sharing distributions where Mr. Rogers received $333.08.

42. For calendar year 2024, United issued company-wide profit-sharing distributions where Mr. Rogers received $56.35.

43. On February 14, 2025, Defendant's HR Operations responded to Plaintiff's Help Hub request, stating that USERRA does not require employers to "deem" earnings for periods of military employment when calculating profit sharing, and that only pay actually earned counts as eligible wages.

44. Defendant's Help Hub agent responded to Plaintiff's request, stating that USERRA does not require employers to deem earnings for periods of military employment when calculating profit sharing, and that eligible wages under the Profit Sharing Plan only include pay actually earned.

45. Defendant's Profit-Sharing payment for 2024 was scheduled to be paid on February 27, 2025, by stand-alone check.

46. For calendar year 2023, Defendant issued company-wide profit-sharing distributions totaling approximately $681 million, with most similarly situated employees receiving roughly $4,000 in bonuses.

7

47. Plaintiff alleges that he received $333.08 in profit-sharing for 2023.

48. For calendar year 2024, Defendant issued profit-sharing in excess of $700 million.

49. Plaintiff alleges that he received $56.35 in profit-sharing for 2024.

50. Plaintiff further alleges that the official 2023 Profit Sharing Statement showed $0.00 eligible earnings, a profit-sharing percentage of approximately 3.1673%, and a payment amount of $333.08.

51. The official Profit-Sharing Statement for 2024 showed $0.00 eligible earnings, a profit sharing percentage of approximately 3.3595%, and a payment amount of $56.35.

52. Defendant notified Plaintiff the *Help Hub* request had been completed.

   c. Mr. Rogers post return to United and his request to attend his convalescent child, pregnant wife and upcoming baby.

53. On or about April 25, 2025, Plaintiff contacted Defendant's HR staff to inquire about his eligibility for FMLA leave for childcare for his 2-year-old son and his upcoming baby due June 18, and proposed time off from mid-October to early January.

54. Plaintiff sent a message to Defendants' HR representative, Ms. Lauren Rynders, copying other Defendant's HR and management staff, asking for the reason he was not eligible for FMLA.

55. Ms. Rynders responded that Plaintiff was not eligible for federal FMLA, but qualified for HFLL, and stated that childcare did not qualify unless something else was involved. (up to 4 weeks per year with up to 10 days paid from his sick bank and stated that childcare did not qualify absent more details).

56. Nonetheless, Defendant suggested Plaintiff submit the regular FMLA form for review.

57. Defendant did not mention that Plaintiff's military service should be credited toward the 1,250-hour FMLA eligibility threshold under federal law.

58. Plaintiff had logged approximately 850 working hours at Defendant in the prior 12 months, but would have surpassed 1,250 hours if his full-time military orders were counted.

59. Defendant did not credit Plaintiff's military service toward the FMLA threshold and denied his request for protected parental leave.

60. Defendant did not provide Plaintiff with any FMLA eligibility notice, paperwork, or accommodation.

61. On April 25, 2025, United told Mr. Rogers he was not eligible for federal FMLA.

62. Defendant's HR staff, including Ms. Regina Boston, forwarded general FMLA information to Plaintiff and directed him to the Employee Service Center, but did not resolve his eligibility.

63. Because Defendants denied FMLA, Mr. Rogers had to arrange childcare and readjust because of the fact he would have had to be absent from assisting his wife, new born and young child.

d. Mr. Rogers 401K plan

64. Plaintiff is and, at all relevant times, was employed by Defendant and participated in Defendant's employer-sponsored 401(k)/retirement plan.

65. Upon information and belief, Defendants are also the plan sponsor and/or plan administrator of the applicable 401(k)/retirement plan for Plaintiff.

66. Based on Plaintiff's review of his Fidelity/401(k) account records, employer retirement contributions were not made during most of Plaintiff's USERRA-covered service period of approximately May 2023 through September 2024.

67. Plaintiff's Fidelity/401(k) account records reflect that contributions appear to resume on or about November 29, 2024, in the amount of $264.

68. Plaintiff did not observe any retroactive make-up employer contributions in his Fidelity/401(k) account records that would cover the military leave period of approximately May 2023 through September 2024.

69. Defendant's own guidelines state: "*Years of service for vesting purposes includes military and other approved leaves of absence and layoffs occurring after January 1, 1976 provided (i) the employee returns to active service prior to the date any benefits become payable, and (ii) the employee returns to active service within the statutory period after discharge from the military or within 90 days following termination of such leave or layoff.*"

d. United's Military Leave Policy

70. United maintains written leave policies that expressly characterize military leave as "unpaid military leave."

71. Upon information and belief, United's military leave policy states that employees on unpaid military leave retain their existing sick and on the job injury ("OJI") banks but do not accrue additional sick or OJI credit during unpaid military leave.

72. Plaintiff took military leave to perform USERRA covered service and did not receive wages or pay from Defendants during such military leave.

73. Defendants' leave policies provide pay protection for employees serving on jury duty, witness services and other types of leave.

74. Plaintiff to date, has received no military leave pay for his active-duty period or any portion of military duty period.

**COUNT ONE**

***Defendants wrongfully interfered with Plaintiff's FMLA rights in violation of 29 U.S.C. § 2615 by denying eligible leave.***

10

75. Plaintiff realleges and incorporates the allegations by reference all preceding paragraphs as is set forth herein.

76. The Code of Federal Regulations states that for FMLA eligibility, *"An eligible employee is an employee of a covered employer who: Has been employed by the employer for at least 12 months, and, Has been employed for at least 1,250 hours of service during the 12-month period immediately preceding the commencement of the leave. . ."* 29. C.F.R. § 825.110(a)(1)-(2).

77. USERRA requires that a person reemployed under its provisions be given credit for any months of service he or she would have been employed but for the period of absence from work due to or necessitated by USERRA-covered service in determining eligibility for FMLA leave.

78. A person reemployed following USERRA-covered service should be given credit for the period of absence from work due to or necessitated by USERRA-covered service towards the months-of-employment eligibility requirement.

79. Each month served performing USERRA-covered service counts as a month actively employed by the employer. For example, someone who has been employed by an employer for nine months is ordered to active military service for nine months after which he or she is reemployed. Upon reemployment, the person must be considered to have been employed by the employer for more than the required 12 months (nine months actually employed plus nine months of USERRA-covered service) for purposes of FMLA eligibility.

80. Mr. Rogers had accumulated enough hours of service and United did not credit his USERRA-covered service time, wrongfully interfering with Plaintiff's rights under FMLA.

81. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered damages, including but not limited to lost employment benefits and damages, in an amount within the jurisdictional limits of the Court.

## COUNT TWO

***Defendant United discriminated against Plaintiff in violation of 38 U.S.C. § 4311 by denying the proper profit-sharing distribution.***

82. Plaintiff realleges and incorporates by reference all preceding paragraphs as is set forth herein.

83. Defendant is subject to the Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C.A. § 4312(a), which provides reemployment rights to persons who serve in the uniformed services. Plaintiff provided proper notice of his military service, served less than five years, was honorably discharged, and timely applied for reemployment. Defendant failed to fully comply with its obligations under § 4312(a) by not providing all rights and benefits to which Plaintiff was entitled upon his return from military service.

84. 38 U.S.C. § 4303(2) defines benefits to include ". . . any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental

unemployment benefits, vacations, and the opportunity to select work hours or location of employment."

85. A profit-sharing distribution plan like United's qualifies as a benefit as defined in this statute.

86. On February 14, 2025, HR Operations stated in writing that "USERRA does not require employers to 'deem' earnings for periods of military employment when calculating profit sharing," and limited eligible wages to pay actually earned, thereby excluding military-leave periods from profit-sharing credit.

87. Defendant calculated Mr. Rogers profit sharing exclusively on pay actually earned, refused to credit periods of military service toward eligible earnings, and thereby denied a benefit of employment because of military service.

88. Plaintiff disputes that position and alleges that United's exclusion of military-service periods from eligible earnings denied him a protected benefit of employment under USERRA.

89. Plaintiff's awards were significantly low relative to company-wide profit-sharing levels and similarly situated employees. For calendar year 2023, United issued company-wide profit-sharing distributions totaling approximately $681 million, with most similarly situated employees receiving roughly $4,000 in bonuses.

90. In 2023, while Mr. Rogers was executing military active duty orders, received *$333.08*. In 2024, while Mr. Rogers was still executing military active duty orders United again issued profit-sharing in excess of $700 million, but Mr. Rogers received *$56.35*.

91. Defendant failed to distribute profits in accordance with the statute.

92. Defendant's denial of profit-sharing credits and related benefits was willful or in reckless disregard of USERRA.

93. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered damages, including but not limited to lost employment benefits and damages, in an amount within the jurisdictional limits of the Court.

## COUNT THREE

### *USERRA (38 U.S.C. §§ 4312, 4316(a)): Reemployment/Escalator and Failure to Restore Seniority-Based Benefits and Position*

94. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

95. Under USERRA, a returning service member is entitled to prompt reemployment in the position he would have attained with reasonable certainty had employment not been interrupted by military service (the "escalator position"), with restoration of seniority and seniority-based rights and benefits as if continuously employed.

96. Plaintiff served on extended active-duty orders, notified United of his return in December 2024, and HR directed him to report by December 23, 2024, which he did.

97. USERRA prescribes that in the case of a person whose period of service in the uniformed services was for more than 30 days but less than 181 days, by submitting an application for reemployment with the employer not later than 14 days after the completion of the period of service or if submitting such application within such period is impossible or unreasonable through no fault of the person, the next first full calendar day when submission of such application becomes possible.

98. Despite this, Defendant commanded an immediate/next-business-day return and dismissed Plaintiff's request for reintegration time, stating it did not show anything providing such leeway.

99. Upon reemployment, United failed to restore Plaintiff to the precise seniority-based position he would have occupied, including proper placement on the seniority-based field trip list and comparable rosters, thereby denying seniority-driven scheduling/assignment priorities and associated economic benefits.

100. As a result of United's failure to apply the escalator principle and restore seniority-based rights, Plaintiff lost field trip selections, overtime opportunities, and other seniority-linked benefits.

101. United's actions were willful and/or in reckless disregard of USERRA's clearly established reemployment/escalator and seniority-restoration mandates, including by rejecting Plaintiff's reliance on return-period protections and by failing to restore his proper seniority-based placement.

102. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered damages, including but not limited to lost employment benefits and damages, in an amount within the jurisdictional limits of the Court.

## COUNT FOUR

### USERRA (38 U.S.C. § 4318): Pension/Retirement Plan Violations

103. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

104. USERRA requires that military service be treated as service with the employer for purposes of retirement plan participation, vesting, and benefit accrual, with required employer contributions (including matching/nonelective) determined based on the pay the employee would have received but for military service, or, if not reasonably certain, the employee's average pre-service compensation. Employers must permit make-up elective deferrals and provide corresponding employer contributions within the USERRA make-up window.

105. Upon information and belief, Plaintiff returned to active employment with Defendant within the time frames referenced in Defendant's guideline quoted above, and his service during the military leave period was creditable for vesting and related plan purposes.

106. Defendant's failure to fund employer retirement contributions for Plaintiff's period of USERRA-covered service resulted in a shortfall in Plaintiff's plan account, including missed employer contributions for the covered period and foregone earnings that would have accrued on those contributions.

107. United's collective bargaining agreement provides 401(k) retirement benefits, including employer matching contributions, and recognizes service and vesting concepts consistent with years of service continuing during protected leaves.

108. United failed to make required employer 401(k) contributions for Plaintiff's USERRA-covered service from approximately May 2023 through September 2024, and contributions only resumed on or about November 29, 2024, in the amount of approximately $264, without retroactive make-up contributions for the protected period, depriving Plaintiff of plan funding and the tax-deferred growth that would have accrued.

109. By failing to make the required employer contributions for the USERRA-covered service period, and by not providing make-up contributions after resumption around November 29,

2024, United violated § 4318's mandate to treat military service as continuous employment for retirement plan accrual and contributions.

110. United's failure to apply clear, longstanding § 4318 make-up rules, despite administering a detailed CBA-governed 401(k) plan and acknowledging service/vesting continuity for protected leaves, was willful and/or in reckless disregard of USERRA.

111. As such, Plaintiff seeks all missed employer 401(k) contributions attributable to his USERRA-covered service (approximately May 2023–September 2024), lost tax-deferred investment earnings on those contributions, liquidated damages, plan record corrections, interest, attorneys' fees, costs, and appropriate equitable relief.

## COUNT FIVE

### *USERRA (38 U.S.C. § 4316(b)(1)): Non-Seniority Benefits Comparability During Military Leave*

112. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

113. An employee on military leave is deemed on furlough or leave of absence and is entitled to the same non-seniority rights and benefits generally provided to similarly situated employees on comparable forms of non-military leave.

114. United provides pay or comparable non-seniority benefits for comparable non-military absences such as jury duty and company-requested witness service.

115. Defendants own policies state employees released for jury duty will not suffer any loss of pay and are pay-protected (with protection extending through the end of the following week for trades), and that company-requested witness service is paid under the same procedures as jury duty.

116. United prescribes that military leave is unpaid.

117. Defendants treated Plaintiff's military leave as unpaid for non-seniority benefits and excluded military-leave periods from profit-sharing credit, as reflected by their own statement that "USERRA does not require employers to 'deem' earnings for periods of military employment when calculating profit sharing," limiting eligible wages to pay actually earned.

118. United also rejected Plaintiff's request to take short, protected time following his return from active duty and directed him to use sick dependent or vacation time, reflecting disparate treatment of military leave and related leave needs as compared to pay-protected non-military absences.

119. United's failure to provide the same non-seniority benefits for Plaintiff's military leave as it provides for comparable non-military leaves (including paid jury duty and company-requested witness service and profit-sharing credit tied to paid status) violates § 4316(b)(1).

120. United's conduct was willful and/or in reckless disregard of USERRA because it expressly maintained paid or pay-protected non-military leaves while articulating a written policy excluding deemed earnings for military-leave periods from profit-sharing calculations, contrary to § 4316(b)(1)'s equal-benefit mandate.

121. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages, including but not limited to lost employment benefits and damages, in an amount within the jurisdictional limits of the Court.

## V.  **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Nathan Rogers prays for the following relief:

a.  Appropriate monetary relief, in an amount to be determined by the jury, under 29 U.S.C. § 2617 (FMLA);

b.  All attorney's fees, litigation expenses, and costs associated with this action under 29 U.S.C. § 2617;

c.  Appropriate monetary relief, in an amount to be determined by the jury, together with liquidated damages under 38 U.S.C. § 4323(d) (USERRA);

d.  All attorney's fees, litigation expenses, and costs associated with this action under 38 U.S.C. § 4323(h)(2) (Dole Act addition to USERRA); and

e.  Appropriate equitable relief, as determined by the court under 38 U.S.C. § 4323(e).

## VI.  DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial of all issues triable in this action.

Dated: June 17, 2026                         Respectfully Submitted,

*/s/Sean C. Timmons*
Sean C. Timmons, Esq., LL.M.
Managing Partner, Tully Rinckey PLLC
Texas Bar No.: 24067908
New York State Bar No.: 5470190
Admitted to Practice in all Texas Federal Courts
18722 University Blvd., Ste. 235
Sugar Land, TX 77479
(832) 240-3273 Phone
(281) 387-3411 Cell
(832) 241-5998 FAX
stimmons@tullylegal.com
*Attorney for Plaintiff, Nathan Rogers*

19

**_/s/Michelle A. Salermo_**
Michelle Alvarado Salermo, Esq.
Associate, Tully Rinckey PLLC
MN Bar No. 0505805
5488 Sheridan Drive Suite 500
Buffalo NY 14221
Tel: (716) 272-3015
Fax: (716) 462-4455
msalermo@tullylegal.com
*Attorney for Plaintiff, Nathan Rogers*

20

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of June, 2026, the foregoing Complaint was delivered via the CM/ECF system:

> ***/s/Sean C. Timmons***
> Sean C. Timmons, Esq., LL.M.
> Managing Partner, Tully Rinckey PLLC
> Texas Bar No.: 24067908
> New York State Bar No.: 5470190
> Admitted to Practice in all Texas Federal Courts
> 18722 University Blvd., Ste. 235
> Sugar Land, TX 77479
> (832) 240-3273 Phone
> (281) 387-3411 Cell
> (832) 241-5998 FAX
> stimmons@tullylegal.com
> *Attorney for Plaintiff, Nathan Rogers*
>
> ***/s/Michelle A. Salermo***
> Michelle Alvarado Salermo, Esq.
> Associate, Tully Rinckey PLLC
> MN Bar No. 0505805
> 5488 Sheridan Drive Suite 500
> Buffalo NY 14221
> Tel: (716) 272-3015
> Fax: (716) 462-4455
> msalermo@tullylegal.com
> *Attorney for Plaintiff, Nathan Rogers*